## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOSEPH JADCZAK and CATHERINE JADCZAK, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 07-431 GMS |
| v. | ) ) | |
| HOMESITE INSURANCE COMPANY and ASSURANT, INC., t/d/b/a Assurant Solutions, | ) ) ) | |
| Defendants. | ) ) ) | |

## AMENDED COMPLAINT FOR DECLARATORY AND OTHER RELIEF

### Nature of the Action

1.      This is an action seeking recovery of compensatory and punitive damages, declaratory relief, violations of the Delaware Consumer Fraud Act, 6 *Del. C.* § 2513 *et seq*., and other relief arising from defendant Homesite Insurance Company's breach of contract, bad faith breach of contract, and otherwise wrongful refusal to honor its contractual obligations under a certain policy of first-party property insurance issued to plaintiffs by defendant Homesite. In addition, plaintiffs seek to recover damages from Assurant Inc., the entity which placed, obtained, and/or underwrote plaintiffs' homeowners' insurance coverage, on the basis that the coverage was inadequate to protect plaintiffs' interest in their property.

2.      This action seeks, *inter alia*, a declaration that plaintiffs are entitled to full reimbursement of the cost of rebuilding a structure located on plaintiffs' residence premises in Milton, Sussex County, Delaware which was destroyed by a fire, and that plaintiffs are entitled to full payment (less depreciation) for property destroyed in the aforementioned fire.

### The Parties

3.      Plaintiffs are husband and wife and reside at 29555 Eagles Crest Drive, Milton, Delaware 19968.

4.      Defendant Homesite Insurance Company ("Homesite") is an insurance carrier domiciled in Boston, Massachusetts and duly authorized to transact business in the State of Delaware. Pursuant to 18 *Del. C.* § 525(a), it may be served by serving process upon the Honorable Matthew P. Denn, Insurance Commissioner of the State of Delaware.

4a.     Defendant Assurant, Inc. ("Assurant") trades and does business as "Assurant Solutions" and is a Delaware corporation with a principal place of business in the State of Georgia. Pursuant to 10 *Del. C.* § 3111, it may be served by serving its registered agent, The Corporation Trust Company, at The Corporation Trust Center, 1209 N. Orange Street, Wilmington, Delaware 19801.

4b.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1), in that the matter in controversy in this action exceeds the sum of $75,000.00 and is between citizens of different states. Pursuant to 28 U.S.C. § 1332(c), for the purposes of diversity of citizenship, defendant Assurant is a citizen of the State of Georgia, where it has its principal place of business.

4c.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to this claim occurred in this District and relevant witnesses are located in this District.

**The Insurance Contract**

5.      At all times relevant herein, plaintiffs were the owners in fee simple of an improved parcel of land at the "Eagles Crest" subdivision, located at 29555 Eagles Crest Drive, Milton, Sussex County, Delaware 19968.

6.      At all times relevant herein, plaintiffs were the named insureds under a contract of insurance issued by defendant Homesite under policy number 30318103 with effective dates of August 16, 2005 to August 16, 2006 ("the Policy").  Upon information and belief, the Policy was obtained by plaintiffs' lender at the time plaintiffs applied for or qualified for a mortgage on the property which they purchased. The policy was placed through AIG Insurance Company or one of its member insurers, which subsequently transferred the policy to defendant Homesite when AIG ceased writing homeowners' insurance policies in the State of Delaware.

7.      The Policy afforded first-party property-damage coverage to plaintiffs under "Section I – Property" with the following limits:

Coverage A – Dwelling            $622,000.00

Coverage B – Other Structures    $ 62,200.00

Coverage C – Personal Property   $435,400.00

Coverage D – Loss of Use         $124,400.00

8.      The Policy declarations indicate that the "Insured Location" of the Policy is "29555 Eagles Crest Road, Milton, DE 19968-3621

9.      The Policy declarations, under "Description of Dwelling", state:

2000 Clapboard structure, Single family home, Primary residence,
Partially Protected, territory code 0002, over 1000ft. from hydrant,
within 5 miles from fire station.

10      Under the "Definitions" section of the Policy, the following definitions may be found:

(a)    **4.**    "Insured location" means:

**a.**    The "residence premises";

**b.**    The part of other premises, other structures and grounds used by you as a residence and:

(1)    Which is shown in the Declarations; or

(2)    Which is acquired by you during the policy period for your use as a residence;

**c.**    Any premises used by you in connection with a premises in **4.a.** and **4.b.** above; * * *

(b)    **8.**    "Residence premises" means:

**a.**    The one family dwelling, other structures, and grounds; or

**b.**    That part of any other building;

where you reside and which is shown as the "residence premises" in the Declarations. * * *

11.    Under "Section I – Property Coverages" of the Policy, defendant Homesite committed itself to insure the following under "Coverage A – Dwelling":

We cover:

1.    The dwelling on the "residence premises" shown in the Declarations, including structures attached to the Dwelling; and

2.    Materials and supplies located on or next to the "residence premises" used to construct, alter, or repair the dwelling or other structures on the "residence premises".

This coverage does not apply to land, including land on which the dwelling is located.

12.    Under "Section I – Property Coverages" of the Policy, defendant Homesite committed itself to insure the following under "Coverage B – Other Structures":

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.  * * * The limit of liability for this

4

coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

13.    Under "Section I – Property Coverages" of the Policy, defendant Homesite

committed itself to insure the following under "Coverage C – Personal Property":

We cover personal property owned or used by an "insured" while it is anywhere in the world. * * *

14.    Under "Section I – Property Coverages" of the Policy, "Coverage C – Personal

Property" contained the following language which purports to exclude certain claims under

"Coverage C – Personal Property":

**Property Not Covered.** We do not cover:

**3.**    Motor vehicles or all other motorized land conveyances. This includes:

**a.**    Their equipment and accessories; or

**b.**    Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

**(1)**    Accessories or antennas; or

**(2)**    Tapes, wires, records, discs, or other media;

For use with any electronic apparatus.

The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

**a.**    Used to service an "insured's" residence; or

**b.**    Designed for assisting the handicapped.

15.    Under "Section I – Property Coverages" of the Policy, defendant Homesite committed itself to insure against the following pursuant to a section entitled "Additional Coverages":

> **2.    Reasonable repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to the property is caused by an applicable Peril Insured Against. * * *

> **3.    Trees, Shrubs, and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

> We will pay up to 5% of the limit of liability.

### The Insured Property

16.    "Eagles Crest" is a residential airpark, wherein property owners who are also aviators live on a private airstrip. Property owners such as plaintiffs may, if they elect, build hangars in which to store their personal aircraft.

17.    Located on plaintiffs' parcel of land was one (1) single-family residential dwelling, together with one (1) aircraft hangar ("the Hangar").

18.    The Hangar was constructed after plaintiffs moved into their home, at which time plaintiffs equipped the Hangar with electricity, heat, running water, and sewer/septic service. Located within the Hangar were, among other things, a refrigerator, a television set, two-way radios, and a study used by plaintiff Joseph Jadczak ("Mr. Jadczak").

19.     Plaintiffs stored one (1) aircraft within the Hangar, together with a recreational vehicle ("the RV") and associated items.

20.     At all times relevant herein, the RV was neither registered nor titled in Delaware or any other state, and the RV was not covered by any policies of automobile insurance.

21.     From time to time prior to the events giving rise to the allegations set forth in this Complaint, plaintiffs would use the RV as a spare bedroom, usually when hosting relatives, by hooking the RV up to the power, water, and sewer/septic lines located in the Hangar.

**The Fire**

22.     On or about May 29, 2006, a fire occurred in the Hangar ("the Fire").

23.     The Fire resulted in the total destruction of the hangar and its contents, including the RV, with the exception of plaintiffs' airplane, which Mr. Jadczak was able to remove from the Hangar without damage.

24.     The Fire also caused damage to plaintiffs' home.

25.     Multiple fire companies responded to the Fire, which was investigated by the Delaware State Fire Marshal's Office.

26.     The Fire was determined to be accidental in nature.

27.     Plaintiffs immediately notified defendant Homesite of the Fire.

28.     Despite being immediately notified of the Fire, defendant Homesite failed to promptly send an adjuster to the scene of the fire to obtain photographic evidence of the Fire and to preserve evidence and materials that would assist defendant Homesite in pursuing a subrogation claim. Instead, defendant Homesite sent Chap Chancellor, AIC, an independent adjuster, to meet with plaintiffs some weeks after the fire to obtain a statement of their losses,

and then failed to instruct Mr. Chancellor to obtain a sworn proof of loss statement from plaintiffs.

29.    In addition, defendant Homesite failed to retain a cause-and-origin investigator determine the nature of the Fire.

30.    Plaintiffs timely submitted proof of their losses to defendant Homesite.

### Homesite Issues a Lengthy Reservation-Of-Rights Letter

31.    On or about June 27, 2006, Maria Loffredo, a "Large Loss Specialist" employed by defendant Homesite, sent plaintiffs a reservation of rights letter ("ROR Letter"). The ROR Letter contained numerous misstatements of fact and/or misrepresentations, including, but not limited to, the following:

(a)    That the Fire was "an alleged fire", when in fact the Fire occurred and was reported in several local media outlets and defendant Homesite was immediately notified of it;

(b)    That "an old battery charger" had been plugged into the RV at the time of the Fire "for at least three (3) years", when in fact the battery charger had been only plugged in overnight;

(c)    That it was "unclear" whether the Hangar was used for a business purpose, when in fact plaintiffs specifically represented to defendant Homesite and its agents, servants, and/or employees that the Hangar and its contents were used solely for personal matters;

(d)    That the RV had been "allegedly damaged", when in fact it had been totally destroyed by the Fire.

32.    The ROR Letter further represented that defendant Homesite would provide plaintiffs "with a coverage determination upon completion of our investigation" and also requested "an additional 60 days in which to investigate" the Fire and its attendant losses. The

ROR Letter further demanded that plaintiffs produce additional information and documentation to defendant Homesite in support of their claim, which plaintiffs produced.

**Homesite Retains Attorneys Not Licensed in Delaware to
Conduct an Examination Under Oath of Plaintiffs and to Provide Legal Opinions**

33.     Shortly after issuing the ROR Letter, without affording plaintiffs an opportunity to respond to the items requested in the ROR Letter, defendant Homesite retained the Michigan law firm of Merry, Farnan & Ryan, P.C. ("MFR") to conduct an examination under oath ("EUO") of plaintiffs and to provide legal opinions concerning defendant Homesite's obligation to plaintiffs under the Policy.

34.     By letter dated July 7, 2006, Michael T. Ryan, Esquire of MFR—a Michigan attorney not licensed in Delaware—notified plaintiffs of his intention to take their examination under oath, and unilaterally scheduled the examination for August 21, 2006.

35.     Attached to Ryan's letter of July 7, 2006 was a document entitled "The Rights of an Insured When Providing an Examination Under Oath." This document set forth seven purported "rights" which plaintiffs allegedly possessed in connection with their examination under oath. However, this document made no reference to either the Policy or applicable Delaware law.

36.     The "rights" set forth in the aforementioned document included, in pertinent part:

"(3) An examination under oath may only be conducted upon reasonable notice, at a reasonably convenient place and for a reasonable length of time."

"(5) The insurer shall notify the insured that, upon request and free of charge, it will provide the insured with a copy of the transcript of the proceedings and a tape of the proceedings, if one exists."

37.    However, contrary to this listing of plaintiffs' alleged "Rights", MFR, acting at the behest of defendant Homesite, initially unilaterally scheduled plaintiffs' EUO without consulting them, and also failed to reimburse plaintiffs for the cost of the transcript of their EUO, despite requests to do so, until suit was filed against defendant Homesite.

38.    Plaintiff Joseph Jadczak's EUO was taken on October 3, 2006, after defendant Homesite, through counsel, agreed to waive plaintiff Catherine Jadczak's EUO.

39.    The aforementioned EUO was taken by attorney Jeffrey M. Smythe, an associate attorney with MFR, who was also not licensed to practice law in Delaware.

40.    Said EUO lasted many hours in duration and made inquiry with plaintiff Joseph Jadczak into practically each and every item of personal property which plaintiffs alleged was destroyed in the Fire.

**Homesite Provides a Vague Settlement Offer in the Form of a "Sworn Statement in Proof of Loss" Without Explaining the Basis of the Offer**

41.    Despite the length and overly searching breadth of the EUO, defendant Homesite did not provide plaintiffs with any offer to pay any part of their claim until over one month later, when, on November 10, 2006, Loffredo forwarded plaintiffs' attorney a "Sworn Statement in Proof of Loss" ("POL") which required plaintiffs to release all claims against defendant Homesite in exchange for payment of the sum of $122,116.95.

42.    However, the various schedules on the POL forwarded by Loffredo were completely blank, and neither specified the policy forms applicable to the loss nor the items, loss amount, and actual cash value of the personal property which defendant Homesite offered to pay.

43.    Not until plaintiffs' counsel inquired into the basis of the offer presented by defendant Homesite did Smythe provide plaintiffs' counsel with a breakdown of the amounts contained in the offer.

44.    Specifically, Smythe indicated that defendant Homesite's offer consisted of the following:

**Coverage A**
Building repairs:         $  3,584.74
Landscaping repairs:   $21,772.00
**Total:**                      **$25,356.74**

**Coverage B**
Policy limits            $62,200.00
5% debris surcharge  $  3,110.00
**Total:**                     **$65,310.00**

**Coverage C**
Personal property      $45,646.89
Depreciation            $14,196.68
**"Actual cash value"**
**of personal property: $31,450.22**

45.    However, at that time, neither Smythe, Loffredo, nor any other representative of defendant Homesite or MFR  indicated to plaintiffs or their counsel:

(a)    Why defendant Homesite did not afford coverage for the loss of the Hangar under Coverage A;

(b)    The basis of the calculation for its offer to reimburse plaintiffs for their destroyed personal property under Coverage C;

(c)    What, if any, claims submitted by plaintiffs were being denied, and for what reason.

46.    In fact, plaintiffs had submitted evidence to defendant Homesite of losses totaling at least $313,479.90 as follows:

(1)    Rebuilding hangar:              $210,000.00
(2)    Replacement of RV:             $24,430.00
(3)    Replacement of tow dolly:     $1,800.00
(4)    Replacement of radios:         $19,101.00
(5)    Replacement of cargo ramp:   $575.00
(6)    Replacement of two-way radios: $18,000.00

|     |     |     |
| --- | --- | --- |
| (7) | Replacement of various other personal property: | $35,801.90 |
| (8) | Landscaping repair: | $21,772.00 |

47.    In addition, plaintiffs submitted evidence to defendant Homesite, both in writing and at Mr. Jadczak's EUO, that plaintiffs were paying a neighbor rent in the amount of approximately $400.00 per month to house their personal airplane until the Hangar could be rebuilt.

48.    Yet, notwithstanding the clear proof plaintiffs provided to defendant Homesite of their $313,479.90 claim for property damage, and plaintiffs' ongoing payment of rent for their airplane, defendant Homesite failed to pay or commit itself to pay the claim in its entirety, instead paying only $136,313.63, leaving a total of $177,166.27 in plaintiffs' property damage unpaid and/or unreimbursed.

49    Moreover, defendant Homesite neither accepted nor denied plaintiffs' claim, whether orally or in writing, nor did defendant Homesite ever provide a "final coverage determination" to plaintiffs, as defendant Homesite had committed to do in the June 27, 2006 ROR Letter.

50.    In addition, defendant Homesite never paid or committed itself to pay plaintiffs' claim for destruction of their two-way radios, nor did defendant Homesite Homesite explain why it was refusing to pay said claim.

## COUNT I – DECLARATORY JUDGMENT

51.    Plaintiffs repeat and incorporate by reference the allegations set forth in paragraphs 1 through 50 above.

51.    Plaintiffs and defendant Homesite have been unable to agree on defendant Homesite's obligation to plaintiffs.  Therefore, a case in controversy presently exists between the parties.

52.    Plaintiffs seek a declaration from this Court pursuant to the Declaratory Judgment Act, 10 *Del. C.* § 6501 *et seq.,* and SUPER. CT. CIV. R. 57 concerning the rights and obligations of the parties to this action as follows:

(a)    Whether the Policy is sufficiently vague or ambiguous as to place plaintiffs' claim for the total loss of the Hangar within "Coverage A – Dwelling" of the Policy;

(b)    Whether the Policy is sufficiently vague or ambiguous as to place plaintiffs' claim for the total loss of the RV within "Coverage C – Personal Property" of the Policy;

(c)    Whether the Hangar constitutes an "insured location" and/or a "residence premises" under "Coverage A – Dwelling" of the Policy; and

(d)    Whether the RV, two-way radios, and other personal property are covered under "Coverage C – Personal Property" of the Policy.

53.    An award of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

**WHEREFORE,** plaintiffs pray that this Honorable Court enter an order declaring the rights and obligations of the parties hereto.

## COUNT II – DEBT/BREACH OF CONTRACT

54.    Plaintiffs repeat and incorporate by reference the allegations set forth in paragraphs 1 through 53 above.

55.     Defendant Homesite has breached the terms of the Policy by failing and refusing to honor plaintiffs' claims in whole.

56.     Defendant Homesite has further breached the terms of the Policy by engaging in the course of conduct set forth above.

57.     As a result of defendant Homesite's aforementioned conduct in connection with the handling and processing of plaintiffs' claim, including, but not limited to, their failure to accept and pay for the total amount of the loss of the Hangar under Coverage A of the Policy, plaintiffs have sustained financial losses, including, without limitation, securing a personal loan to finance the rebuilding of the Hangar; ~~the unreimbursed cost of securing the transcript from Mr. Jadezak's EUO;~~ refinancing their mortgage to secure additional funds to replace their personal property and reconstruct the Hangar; and expending attorney's fees to vindicate their rights under the Policy.

58.     Defendant Homesite is indebted to plaintiffs in the amount of at least $191,180.88, representing the remaining portion of their claim which was unpaid by defendant Homesite, together with approximately $35,000.00 in closing costs for their refinancing, hangar rent, interest on the aforementioned loan, and other associated expenses.

**WHEREFORE,** plaintiffs demand judgment in their favor in the amount of $191,180.88, together with interest, attorney's fees pursuant to 18 *Del. C.* § 4102, and the costs of this action.

## COUNT III – BAD FAITH

59.     Plaintiffs repeat and incorporate by reference the allegations set forth in paragraphs 1 through 58 above.

60.     Defendant Homesite breached the duty of good faith and fair dealing inherent in all insurance contracts, in that it:

(a)     Failed to timely investigate plaintiffs' property damage claim;

(b)     Failed to assign a cause-and-origin investigator to plaintiffs' property damage claim to determine the cause of the fire and any subrogation potential;

(c)     Issued a lengthy and vague reservation-of-rights letter which failed to place plaintiffs on notice of the reason for the dispute of their claim;

(d)     Upon information and belief, assigned a non-Delaware law firm to render a coverage opinion;

(e)     Permitted its non-Delaware lawyers to issue a document purporting to set forth plaintiffs' "rights" concerning their examination under oath when in fact those "rights" were violated;

(f)     Delayed the investigation of plaintiffs' claim;

(g)     Failed to timely pay plaintiffs' claim, resulting in plaintiffs incurring significant out-of-pocket losses; and

(h)     Otherwise committed acts constituting bad faith which will be determined in discovery.

61.     As a direct and proximate result of defendant Homesite's bad faith, as aforementioned, plaintiffs incurred significant losses, inconvenience, and financial hardship.

62.     As a result of defendant Homesite's conduct, plaintiffs demand punitive damages to punish and make an example of defendant Homesite to deter other similarly situated insurers from engaging in similar conduct.

**WHEREFORE,** plaintiffs demand judgment in their favor for general and punitive damages, together with interest and the costs of this action.

### COUNT IV - VIOLATION OF DELAWARE CONSUMER FRAUD ACT

63.     Plaintiffs repeat and incorporate by reference the allegations set forth in paragraphs 1 through 62 above.

64.     Defendant Homesite's conduct, as aforesaid, is in violation of the Delaware Consumer Fraud Act, 6 *Del. C.* § 2513.

65.    As a direct and proximate result of defendant Homesite's violation of the Delaware Consumer Fraud Act, 6 *Del. C.* § 2513, plaintiffs have suffered and will suffer injury, as alleged herein, and hereby make claim against defendant Homesite for those injuries pursuant to 6 *Del. C.* § 2525.

**WHEREFORE,** plaintiffs demand judgment in their favor for defendant Homesite's violation of 6 *Del. C.* § 2513, as aforesaid, together with interest and the costs of this action.

### COUNT V – NEGLIGENCE

66.    Plaintiffs repeat and incorporate by reference the allegations set forth in paragraphs 1 through 65 above.

67.    The employees, agents, and/or servants of defendant Assurant were negligent in that they:

(a)    Failed to underwrite, obtain, and/or place an insurance policy which was adequate to insure the interests of plaintiffs and their mortgage company in the premises, the structures located thereon, and the personal property contained within the structures;

(b)    Failed to inspect the insurance policy after it was placed to ensure that it was adequate to insure the interests of plaintiffs and their mortgage company in the premises, the structures located thereon, and the personal property contained within the structures;

(c)    Failed to exercise reasonable diligence, care, and judgment in procuring the insurance coverage requested by plaintiffs and/or their mortgage company; and

(d)    Failed to advise plaintiffs and/or their mortgage company of the need to obtain additional insurance coverage to insure the hangar, to the extent the hangar was not fully insured by "Coverage B – Other Structures" of "Section I – Property Coverages" of the Policy.

68.     As a direct and proximate result of the negligence of the agents, employees, and/or servants of defendant Assurant, as aforesaid, plaintiffs incurred damages in the amount of at least $191,180.88, representing the remaining portion of their claim which was unpaid by defendant Homesite, together with approximately $35,000.00 in closing costs for their refinancing, hangar rent, interest on the aforementioned loan, and other associated expenses.

69.     Defendant Assurant is jointly and severally liable for the negligence of its agents, employees, and/or servants, as aforesaid, by virtue of the agency relationship and the doctrine of *respondeat superior*.

70.     As a result of defendant Assurant's conduct, plaintiffs demand punitive damages to punish and make an example of defendant Assurant to deter other similarly situated entities from engaging in similar conduct.

**WHEREFORE,** plaintiffs demand judgment in their favor in the amount of $191,180.88, together with punitive damages, interest, and the costs of this action.

PERRY & SENSOR

By:    /s/ Michael L. Sensor
       Michael L. Sensor, Esquire
       Delaware Bar ID No.  3541
       One Customs House, Suite 560
       P.O. Box 1568
       Wilmington, DE 19899-1568
       Telephone: (302) 655-4482
       Attorney for Plaintiffs

Dated: January 17, 2008